## City of Meadville *versus* Boush.

An ordinance of the city of Meadville dedicated and set apart certain grounds and spaces as a city market, and directed that the revenues to be derived therefrom should be disposed of annually to the highest bidder, who should be invested with the office of superintendent and entitled to all the fees derived from the rent of stalls and stands, as well as the fees collected from the vendors of produce, and for the use of the public scales. Plaintiff's bid was accepted and he became superintendent in 1875. At that time there was a cellar under the market-house. There was no evidence that it had ever been used for the storage of meat or vegetables. In the fall of 1874, it was fitted up and used as a place to confine " tramps." There was a privy vault in this room, which became offensive the succeeding summer, and the use of the cellar as a "tramp room" was discontinued. The plaintiff alleged that it affected the entire cellar so as to make it unfit for use by the market people for the storage of meat and vegetables, whereby he was prevented from renting some of the stalls, and was deprived of the use of the cellar for 1875, and he brought an action to recover damages therefor. *Held*, that there was no contract of letting, and that he could not recover.

November 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1879, No. 196.

Assumpsit by A. T. Boush against the city of Meadville. Appeal from the judgment of a justice of the peace.

In 1873, the city of Meadville built a market-house. On the 25th of May 1874, the city council passed an ordinance providing that the revenues to be derived from the market fees and rent of stalls and stands should be sold annually to the highest bidder. The ordinance set apart the square on which the market-house was built, and the streets and alleys adjacent as market spaces. It provided that the person whose bid was accepted should be invested with the office of superintendent of the market, and should be entitled to all the fees to be derived from the rent of the stalls and stands, as well as the fees to be collected from the vendors of produce and the fees for the use of the public scales. These fees, except the rent of the stalls and stands, were fixed by the ordinance. The ordinance also provided that the superintendent, under direction of the market committee, should have entire supervision over the market; and made it his duty to cause the market-house to be kept neat and clean, &c.

[City of Meadville *v.* Boush.]

In the fall of 1874 the city cut a trap-door through the floor of the market-house and put in stairs to the cellar and basement. They also partitioned off one corner of the basement and made an outside entrance to this room, and used it for lodging tramps during the winter of 1874–5. In this tramp room was dug a privy vault, which in warm weather became offensive, and on complaint of the health officer the use of the tramp room was abandoned. This was about the first of June 1875. The plaintiff below, A. T. Boush, was appointed superintendent of the market in January 1875. There was no contract with him except the market ordinance, and his bond to the city conditioned that he should perform the duties of superintendent of market and pay the amount of his bid into the city treasury.

The claim of the plaintiff below was for damages for being deprived of the use of the cellar, not as market space, but as a room for storing produce between market days. According to his testimony he could have rented more stalls in the market-house, if, with them, he could have given cellar room for storing meat and vegetables; and that the cellar was rendered unfit for such purpose by the nuisance maintained by the city, to wit: the tramp room. The claim was not for that part of the cellar used by the city, nor that its use rendered the market-house and market spaces above less valuable, or drove patronage away from the market, but that the city did not give him a proper cellar for use by his patrons as a storage room. The ground-floor of the market-house was on a level with the surface outside, and the cellar was dark, being lighted through iron grating in the walks outside. The cellar was never used for any purpose connected with the market. The defence in the court below was that if the plaintiff was deprived of the use of the cellar by the acts of the city, he did not lose anything to which he was entitled under the ordinance which defined his rights and duties. The suit was originally brought before a justice of the peace, and there the defendant confessed a judgment for ten dollars to cover a few items in plaintiff's claim not disputed, and the Common Pleas having decided that the justice had not jurisdiction of the complaint for nuisance, the judgment was entered without costs accruing after the appeal. This was not complained of.

At the trial, before Church, P. J., the defendant submitted the following points which the court refused:

1. That there is no evidence of a letting of the basement of the market-house by the defendant to the plaintiff, but simply an appointment of the plaintiff as clerk or superintendent of the markets, with a right to the market fees as prescribed by the ordinance, and the right to rent the stalls of the market-house. (First assignment of error.)

2. That if the plaintiff was deprived of the rent which he might

[City of Meadville *v.* Boush.]

have got for the basement, from private persons for private purposes, or for the storage of produce between market days, he did not thereby lose any rights granted him by the defendant. (Second assignment.)

3. That there is no evidence that the plaintiff was deprived of any market spaces, which he could have used or leased for market purposes, such as are contemplated by the ordinance, and were sold to the plaintiff by the defendant, and therefore the plaintiff cannot recover. (Third assignment.)

The court, inter alia, charged:

"The defendant goes to trial upon the point that she is not liable under this complaint, and says, that the cellar did not belong to the plaintiff and was not rented to him. We say, that we believe the cellar was rented to him, and it became a part of his prerogative to rent and take fees for it. It is comprised within the meaning of market-house stands and stalls, and if he was deprived of the use and benefit of that property during the year 1875, the city is liable to respond to him in damages. * * * (Fourth assignment.)

"If you find from the evidence, that he was deprived, by reason of the maintenance of a nuisance, of any part of that market-house up-stairs or down-stairs, it was depriving him of the rights and privileges which he was invested with, by the acceptance of and by his appointment as superintendent of markets, &c." (Fifth assignment.)

Verdict for plaintiff for $198.91. Defendant took this writ and alleged, that the court erred in the answers to the above points, and the portion of the general charge noted.

*J. W. Smith,* for plaintiff in error.

*C. M. Boush,* for defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, January 5th 1880.

The defendant's first point (1st assignment) raises the important question of this case. It called upon the court to instruct the jury that "there is no evidence of a letting of the basement of the market-house by the defendant to the plaintiff, but simply of an appointment of the plaintiff as clerk or superintendent of the markets, with a right to the market fees as prescribed by the ordinance, and the right to rent the stalls of the market-houses." The court negatived this point so far as it conflicted with the general charge as it is in direct conflict with the general charge it must be regarded as refused without qualification.

It is not contended that there was any contract of letting between the parties other than such as may be implied by the appointment of plaintiff as superintendent of the markets. On the 25th of May

[City of Meadville *v.* Boush.]

1824, city councils passed an ordinance " To define and regulate markets in the city of Meadville." By the terms of said ordinance "the grounds upon which the market-house is built, alleys adjacent, and Market street between Chestnut and Centre streets are hereby dedicated and set apart as market grounds and spaces, to be known as city market," &c. Section 3 provided that "from and after the passage of this ordinance the revenues to be derived from the fees of the market, the rent of stalls and stands, shall be disposed of annually to the highest bidder." The seventh section provided that the person whose bid should be accepted "shall be invested with the office of superintendent of the market, and shall be entitled to all the fees to be derived from the rent of the stalls and stands, as well as the fees collected from the vendors of produce and so forth, and for the fees for the use of the public scales." The bid of the plaintiff below was accepted and he was appointed superintendent of the markets in January 1875. At that time there was a cellar under the market-house. There was no evidence that it had ever been used for the storage of meat and vegetables. One of plaintiff's witnesses says : "I think there are no stalls in the cellar to rent to persons who sell vegetables. There are no stalls in the cellar. I do not know whether it is used now. It is very dark down there. You cannot see unless you go where the window is." There was a room partitioned off from this cellar. In the fall of 1872 it was fitted up and used for "tramps," from some time in November to the month of January. There was a privy vault in this room described by plaintiff's witnesses as a "dug out" about two feet deep. This became offensive the succeeding summer and its use as a "tramp room" was discontinued. The plaintiff alleged that it so affected the entire cellar as to make it unfit for use by the market people for the storage of meat and vegetables, whereby he was prevented from renting some of the stalls, and was deprived of the use of the cellar for the year 1875. This action was brought to recover damages for the loss occasioned thereby.

The learned judge assumed, that the cellar was rented to the plaintiffs. He instructed the jury (see 4th assignment), " We say that we believe the cellar was rented to him, and it became a part of his prerogative to rent and take fees for it." We look in vain through the evidence, for such a letting. The stairway to the cellar could only be reached through a trap-door. One witness says he *supposed* it was for the use of the markets. The plaintiff testified : " When I got possession, that trap-door and the stairs were there. It was for the use of the market people." Conceding all this to be true, it does not help the plaintiff's case. There was no proof that the cellar was intended, or had ever been used for a purpose that was in any degree interfered with by the existence of the nuisance complained of. If it had been used as a room for the

[City of Meadville *v.* Boush.]

storage of meats and vegetables by the owners of market stalls, such fact could readily have been shown. There is nothing in the ordinance from which an authority to use the cellar for such purposes, can even be implied. On the contrary, we find by the 22d section, that "Every person occupying a space in said market shall, within one hour after the time of closing said market, as mentioned in section 2, cause his provisions and vehicle, if he or she have one, to be removed from the market grounds ; also to remove therefrom all animal and vegetable matter." This was, perhaps, not intended to apply to the occupiers of market stalls, as such persons, by section 2, are not confined to hours ; but it is reasonable to suppose, if the cellar were adapted to storage purposes, and intended therefor, some provision would appear in the ordinance giving such right, and regulating the manner of its use.

In the absence of any contract of letting, the rights of the plaintiff are defined by the 7th section of the ordinance before referred to. He "shall be entitled to all the fees to be derived from the rent of the stalls and stands, as well as the fees collected from the vendors of produce and so forth, and from the fees for the use of the public scales." There is nothing here, from which the right of occupiers of market stalls to use the cellars, or the right of the plaintiff to collect fees therefor, may be inferred. As no such use was shown to exist at any time, it is necessary, in order to sustain the plaintiffs' claim, to write into the ordinance something that city councils have not placed there, or else make an agreement for the parties, which the evidence does not show they have made for themselves.

We are of opinion, that the defendant's first point ought to have been affirmed. We need not discuss the remaining assignments. They are all carved out of the first.

Judgment reversed.